Elliot Gale (Bar #263326)
egale@gajplaw.com
Joe Angelo (Bar #268542)
jangelo@gajplaw.com
Gale, Angelo, Johnson, & Pruett, P.C.
1430 Blue Oaks Blvd., Ste. 250
Roseville, CA 95747
916-290-7778 ph
916-721-2767 fax

Attorneys for Plaintiff
Gloria Connors

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| GLORIA CONNORS, <br><br> Plaintiff, <br><br> v. <br><br> Experian Information Solutions, Inc.; TransUnion, LLC, Equifax Information Services, LLC, and CitiMortgage, Inc. <br><br> Defendants. | CASE NO. 2:19-cv-08621 <br><br> COMPLAINT FOR DAMAGES: <br><br> 1. Violation of Fair Credit Reporting Act; <br> 2. Violation of California Consumer Credit Reporting Agencies Act |

COMES NOW Plaintiff Gloria Connors, an individual, based on information and belief, to allege as follows:

## INTRODUCTION

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(2)(A)), 15 U.S.C. § 1681i(a)(4)), 15 U.S.C. §1681i(a)(5)(A)), and the California Consumer Credit Reporting Agencies Act, California Civil Code §1785.25(a).

2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's mortgage account with CitiMortgage, Inc. (hereinafter "Citi").

3. Here, Citi continues to report inaccurate and incomplete information regarding Plaintiff's mortgage account.

4. Citi is reporting the account wholly incomplete and misleading. Specifically, Citi continues to report the account closed and involved in an active bankruptcy despite Plaintiff NOT being in bankruptcy and the account at issue not subject to any bankruptcy discharge.

5. Such reporting is misleading and adversely impacts Plaintiff's credit worthiness.

6. Plaintiff's credit has been damaged as a result of the inaccurate and misleading reporting.

7. Third parties have been exposed to the inaccurate and misleading information contained in Plaintiff's credit report.

8. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

9. Creditors know that by deviating from recognized credit reporting standards consumers will have difficulty raising their credit scores and improving their credit worthiness.

## JURISDICTION & VENUE

10. Plaintiff re-alleges and incorporates herein by reference the allegations in each and every paragraph above, fully set forth herein.

11. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

12. This venue is proper pursuant to 28 U.S.C. §1391(b)(1).

## GENERAL ALLEGATIONS

13. Plaintiff alleges that each and every Defendant is familiar with credit reporting industry standards and subscribes thereto.

14. Plaintiff alleges that each and every Defendant understands that deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if the Defendant reported in accordance with the recognized industry standard.

15. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for credit reporting industry standards in an attempt to purposefully undermine Plaintiff's attempt to improve their FICO Score.

16. In the alternative Plaintiff alleges that each and every Defendant's actions were the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

17. FICO is a leading analytics software company with its principal headquarters located in San Jose California. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

18. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

19. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

20. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

21. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

22. There are 28 FICO Scores that are commonly used by lenders.
23. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).
24. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Inc. and Transunion, LLC.
25. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.
26. There are five key factors that a FICO Score considers: 1) Payment History, 2) Amount of Debt, 3) Length of Credit History 4) New Credit and 5) Credit Mix.
27. Each of the five factors is weighted differently by FICO.
28. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.
29. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score. Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.
30. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.
31. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.
32. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

**e-OSCAR**

33. E-OSCAR is the web-based Metro 2 compliant system developed by Experian Information Solutions, Inc.; Equifax Information Services, LLC; TransUnion, LLC and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.
34. When a consumer sends a dispute letter to a CRA the CRA then sends an automated credit dispute verification (ACDV) via e-Oscar to the DF.
35. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file e.g. "Account Type" "07" (07 in Metro 2 refers to a Charge Account).

**Metro 2**

36. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.
37. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.
38. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.
39. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.
40. The CDIA is *the* expert on accurate credit reporting. In support of his allegations Plaintiff avers the following:
    a. The CDIA offers a FCRA certificate program for all CRAs.
    b. The CDIA offers a FCRA awareness program for all CRAs.
    c. The CDIA offers a FCRA Certificate program for DFs.
    d. The CDIA offers a FCRA awareness program for DFs.

    e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

    f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.

    g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

41. The CDIA's Metro 2 is accepted by all CRAs.

42. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).

43. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.

44. The three main credit bureaus helped draft the CRRG.

45. The CRRG is not readily available to the public. It can be purchased online for $229.45.

46. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

47. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

48. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

49. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

50. All three major CRAs are members of the CDIA

51. The CDIA is on record that they know, understand, and accept mortgages are generally non-dischargeable under 11 U.S.C. §1328(c)(1) and 11 U.S.C. § 1322(b)(5).

### Consumer Information Indicator

52. When a consumer files for bankruptcy protection certain credit reporting industry standards exist.

53. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.

54. The Consumer Information Indicator (CII) is a critical field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.

55. Under Metro 2 the CII must be reported only on the consumer to whom the information applies.

56. It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.

57. In the consumer bankruptcy context CII Metro 2 Code "A" denotes that a petition for Chapter 7 has been filed, is active, but no discharge has been entered.

58. CII Metro 2 Code "D" indicates that a Chapter 13 petition has been filed, is active, but no discharge entered. There is usually translated on a consumer credit report as "Wage Earner Plan" or "WEP" in the "Account Status" portion of a trade line. Such reporting alerts any potential lender that the account is no longer in a collectable status but is being handled by a Chapter 13 trustee.

59. The CII Metro 2 Code "Z" indicates that a bankruptcy petition has been filed but the chapter is undesignated/unknown.

60. The CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.

61. The CII Metro 2 Code "H" denotes that a Chapter 13 bankruptcy has been discharged.

62. The CII Metro 2 Code "Q" is used when a bankruptcy plan is complete and will remove prior bankruptcy codes on the account; the CII Q is used on liabilities that are not discharged in bankruptcy (such as a mortgage).

63. The CII field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.
64. Failure to update the CII to a "Q" on a secured non-discharged debt results in it appearing that a consumer, like Plaintiff, included an account in a bankruptcy proceeding despite not having done so.
65. It also may result (as is the case here) where it appears an account continues to be in an *active* bankruptcy when in fact no bankruptcy case is pending.
66. It also results in the account being calculated as a major derogatory or adverse account despite the fact it was not included or discharged.
67. The result lowers a consumer's credit score and makes a consumer appear much less credit worthy.

### Plaintiff's Dispute

68. On March 6, 2019 Plaintiff ordered a credit report from Experian, Equifax, and TransUnion to ensure proper reporting by Plaintiff's creditors after her chapter 13 bankruptcy was completed.
69. Plaintiff noticed a delinquent and adverse trade line on her March 6, 2019 credit report where Citi was not reporting complete information regarding her mortgage, including reporting that the account was subject to a wage earner plan and included and/or discharged in bankruptcy.
70. In response, Plaintiff disputed the Citi trade line via certified mail with Experian, Equifax, and TransUnion on July 23, 2019.
71. Plaintiff's dispute letters specifically put Defendant Citi on notice that the account should not be listed as discharged, included in bankruptcy, and making payments under a wage earner plan as the account was not discharged and not currently subject to an active bankruptcy case.
72. The dispute also requested that the Citi tradeline be updated to reflect that the account was not discharged.

73. Plaintiff is informed and believes that each CRA received Plaintiff's dispute letter and in response sent Plaintiff's dispute to each DF via an ACDV through e-OSCAR.
74. On September 3, 2019 after the statutory time period had elapsed for Plaintiff to receive a reinvestigation report from the credit Bureaus, Plaintiff ordered a second credit report for the sole purpose to ensure Plaintiff's account had in fact been updated.

### Inaccuracy – Citi

75. Plaintiff was frustrated to see that Defendant Citi did not properly update the account.
76. Citi was still reporting the account as included and or discharged in bankruptcy and making payments under a wage earner plan despite the account not being included or discharged in Plaintiff's chapter 13 bankruptcy.
77. Citi's reporting is inaccurate because Plaintiff did not include or seek to discharge her mortgage with Citi in her bankruptcy filing.
78. Citi's reporting is entirely incomplete, misleading and technically inaccurate.
79. The reporting is incomplete because the report lacks any updates on the account.
80. Citi should have updated the CII to report a "Q" as instructed by the CRRG after Plaintiff completed her chapter 13 plan, or at least removed the bankruptcy notations.
81. As it stands it appears that Citi continues to report the CII "D" making it appear that Plaintiff continues to be in an active bankruptcy and that the account may or may not be subject to Plaintiff's discharge given that such a discharge has been completed.
82. To be clear, it is IMPOSSIBLE for accuracy purposes for Citi to accurately report a CII "D" after completion of Plaintiff's Chapter 13 bankruptcy plan.
83. The CII "D" should only be reported during an active bankruptcy. Plaintiff is no longer in bankruptcy and the account at issue was: 1) not discharged per the CRRG and the bankruptcy code, and 2) not currently in bankruptcy.
84. As a result, Citi should know that the CII "D" cannot possibly be accurate.
85. Such reporting makes Plaintiff appear less credit worthy.

### Willfulness

86. This was not a negligent act by Defendant Citi but instead an intentional act to purposefully undermine Plaintiff's ability to effectively restore her credit.
87. Citi's reporting makes Plaintiff appear less credit worthy because the lack of any update on the account makes it appear that Plaintiff sought to discharge and include her mortgage in her chapter 13 bankruptcy proceeding and that Plaintiff remains in an active Chapter 13.
88. Citi knows that its reporting must be accurate and complete.
89. Citi, with knowledge of Plaintiff's dispute, chose NOT to update Plaintiff's credit report and instead still reported that the account was subject to a chapter 13 bankruptcy and otherwise may or may not be discharged.
90. Such a scheme directly undermines the integrity of the credit reporting system at large.

**Damages**

91. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, and emotional harm.
92. Plaintiff has been unable to obtain favorable interest rates and suffers from a diminished credit score given the inaccurate reporting by Citi.
93. The actions of Experian, Equifax, TransUnion, and Citi as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

**FIRST CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants Experian, Equifax, and TransUnion)

**Experian, Equifax and TransUnion – Failure to Assure Credit Reporting Accuracy.**

94. Plaintiffs reallege and incorporate herein the allegation in each and every paragraph above as though fully set forth herein.
95. TransUnion, Equifax, and Experian violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

96. Had TransUnion, Equifax, and Experian maintained reasonable procedures to assure maximum accuracy TransUnion, Equifax, and Experian would never have allowed Defendant Citi to report the account as described herein.

97. Citi appears to be reporting a "CII" that refers to an active bankruptcy.

98. TransUnion, Equifax, and Experian all report that Plaintiff has completed her bankruptcy and therefore TransUnion, Equifax, and Experian should know that Citi' reporting cannot possibly be accurate.

99. Even assuming the CRAs are not sophisticated enough to address this obvious contradiction, Plaintiff disputed the account and the CRAs still did not fix the issue.

100. Instead, the account remains unchanged.

101. As a result of TransUnion, Equifax, and Experian's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

### Willfulness

102. The violations described herein by TransUnion, Equifax, and Experian were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

103. In 2012 the FTC reported that 1 in 5 consumer credit reports contains a material error.

104. Such a finding should shock the conscience.

105. When those errors are disputed TransUnion, Equifax, and Experian intentionally send consumer disputes to employees who do not live within the continental United States.

106. This is intentionally done to hide and or subvert a consumer's ability to confront individual directly responsible for approving accurate reporting.

107. Such a policy also inevitably leads to disputes going unresolved as these employees for Defendants TransUnion, Equifax, and Experian receive little to know training concerning how to accurately report consumer debt.

108. Instead these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that information is accurate. *See Saez v.*

*Trans Union,* LLC, 621 F.Supp. 2d 1074, 1083, 1088 (D.Or. 2007); *Grigoryan v. Experian Info. Sols*., Inc., 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014); *Haykuhi Avetisyan v. Experian Info Sols*., No. CV 14-05276-AB (ASX)

109. TransUnion, Equifax, and Experian employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.

110. TransUnion, Equifax, and Experian have intentionally setup this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

111. TransUnion, Equifax, and Experian also allowed Citi to report its account with inaccurate information despite specifically being told in the dispute letter why the information Citi was reporting was incorrect.

112. All three CRAs are members of the consumer data industry association

113. The consumer data industry association has specifically briefed and AGREED with Plaintiff that the reporting of Citi in the present matter is inaccurate. See **Brief for the Consumer Data Industry Association as Amicus Curia in Support of Defendents-Appellees** in *Alan R. Riekki v. Bayview Financial Loan Servicing*, et al., Case No 16-16438 in The United States Court of Appeals For the Ninth Circuit.

114. Despite the CRAs having actual knowledge of Plaintiff's bankruptcy, Citi reporting the account included in an ongoing bankruptcy, and the bankruptcy actually being closed, TransUnion and Experian continue to allow Citi to report the account included and discharged in bankruptcy.

115. Not only are TransUnion, Equifax, and Experian allowing Citi to report in a manner that they know is factually impossible (an account cannot be included in an on-going bankruptcy if the bankruptcy has been closed) but in a manner the CDIA has specifically briefed as inaccurate.

116. As a result, TransUnion, Equifax, and Experian are allowing Citi to report in a manner they know is factually and legally inaccurate.

117. Consequently, Defendants TransUnion, Equifax, and Experian are liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

118. In the alternative, TransUnion, Equifax, and Experian were at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

119. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from TransUnion, Equifax, and Experian in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**SECOND CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against Defendants Experian, Equifax, TransUnion, and Citi)

**Citi – Failure to Reinvestigate.**

120. Plaintiffs reallege and incorporate herein the allegation in each and every paragraph above as though fully set forth herein.

121. 15 USC 1681s-2(b) and 15 USC 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

122. Defendant Citi violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

123. The CRAs provided notice to Citi that Plaintiff was disputing the inaccurate and misleading information but Citi failed to conduct a reasonable investigation of the information as required by the Citi.

124. Based on Plaintiff's dispute, Citi should have known that its reporting was incomplete as Plaintiff's dispute letter highlighted the problems with the tradeline.

125. The most basic investigation would simply involve reading Plaintiff's dispute.

126. Plaintiff alleges Citi did not review well established industry standards for credit reporting.

127. If Citi had reviewed such standards Citi would have seen its reporting was not in compliance and in accordance with the CRRG and consequently inaccurate and or incomplete.
128. Moreover, had Citi done any investigation whatsoever it would have uncovered that its reporting showed an active bankruptcy when in fact Plaintiff was not actually in bankruptcy at all.
129. The lack of investigation is unreasonable.
130. Plaintiff further alleges that Citi has not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and as such have developed reckless policies and procedures.

**TransUnion, Equifax, and Experian – Failure to Reinvestigate Disputed Information.**

131. Plaintiff re-alleges and incorporate herein the allegations in each and every paragraph above as though fully set forth herein.
132. After Plaintiff disputed the accounts mentioned above, TransUnion, Equifax, and Experian were required to conduct a reasonable investigation and to delete any information that was not accurate under 15 USC 1681i-(a)1.
133. TransUnion, Equifax, and Experian failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.
134. TransUnion, Equifax, and Experian could not have possibly done any type of reasonable investigation into this matter as Plaintiff explicitly explained that the Citi account was not included or discharged in his bankruptcy.
135. Plaintiffs allege that TransUnion, Equifax, and Experian have its own independent duty to conduct a reasonable investigation 15 USC 1681i-(a)1.
136. TransUnion, Equifax, and Experian are not passive entities bound to report whatever information a DF provides.

137. Given the aforementioned, Plaintiff alleges that TransUnion, Equifax, and Experian can and do suppress inaccurate information from being reported when DFs provide inaccurate information.

138. TransUnion, Equifax, and Experian can and do instruct DFs on how to properly report certain accounts from time to time upon request from the DF.

139. TransUnion, Equifax, and Experian failed to conduct a reasonable investigation because any basic investigation would have included a review of Plaintiff's dispute letters.

140. TransUnion, Equifax, and Experian therefore did not do the most basic investigation regarding credit reporting industry standards otherwise the aforementioned would have been uncovered.

141. TransUnion, Equifax, and Experian intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that TransUnion, Equifax, and Experian's general policy is to simply parrot whatever information a data furnishers sends.

142. Such policy and procedure inherently leads to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

### THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants Experian, Equifax, and TransUnion)

**TransUnion, Equifax, and Experian – Failure to Review and Consider All Relevant Information.**

143. Plaintiffs reallege and incorporate herein the allegation in each and every paragraph above as though fully set forth herein.

144. TransUnion, Equifax, and Experian violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

145. As a result of TransUnion, Equifax, and Experian's violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

146. The violations by TransUnion, Equifax, and Experian were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

147. In the alternative TransUnion, Equifax, and Experian were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

148. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from TransUnion, Equifax, and Experian in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**FOURTH CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants TransUnion, Equifax, and Experian)

**TransUnion, Equifax, and Experian – Failure to Delete Disputed and Inaccurate Information.**

149. Plaintiff re-allege and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

150. TransUnion, Equifax, and Experian violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

151. As a result of TransUnion, Equifax, and Experian's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

152. The violations by TransUnion, Equifax, and Experian were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

153. In the alternative, TransUnion, Equifax, and Experian were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

154. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from TransUnion, Equifax, and Experian in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**FIFTH CAUSE OF ACTION**
(Violation of California Consumer Credit Reporting Agencies Act
California Civil Code § 1785.25(a) Against Defendant Citi)

**Citi – Reporting Inaccurate Information to CRAs.**

155. Plaintiff reallege and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

156. In the regular course of its business operations, Citi routinely furnish information to credit reporting agencies pertaining to transactions between Defendants and Defendant's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

157. Citi intentionally and knowingly reported misleading and inaccurate account information to the CRAs that did not follow with well-established industry standards.

158. Plaintiff alleges that Citi re-reported the information contained herein in violation of California Civil Code § 1785.25(a).

159. Plaintiff also allege that Citi had reason to know that the information reported on Plaintiff's account were misleading, inaccurate, and incomplete.

160. Plaintiff allege that Citi had reason to know that by not complying with well-established industry standards lenders will draw a more negative inference with respect to Plaintiff's credit worthiness.

161. Plaintiff alleges that the dispute letters from all three credit reporting agencies, the consumer data industry resource guide, and results of its investigation should have provided notice to Citi of its misleading and inaccurate reporting.

162. Citi failed to notify TransUnion and Experian that the information Citi re-reported was inaccurate before the end of 30 business days, in violation of California Civil Code § 1785.25(a).

163. Citi's communications of false information, and repeated failures to investigate, and correct their inaccurate information and erroneous reporting were done knowingly, intentionally, and in reckless disregard for their duties and Plaintiff's rights.

164. As a direct and proximate result of Citi's willful and untrue communications, Plaintiff has suffered actual damages including but not limited to reviewing credit reports from all three consumer reporting agencies, time reviewing reports with counsel, sending demand letters, diminished credit score, denial of credit, and such further expenses in an amount to be determined at trial.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;
2. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n and California Civil Code § 1785.31;
3. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n; and California Civil Code § 1785.31
4. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o; California Civil Code § 1785.31;
5. For determination by the Court that Creditor's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and
6. For determination by the Court that Creditor's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

**Gale, Angelo, Johnson, & Pruett, P.C.**

Dated: October 7, 2019

*/s/ Joe Angelo*
Joe Angelo
Elliot Gale
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of this matter by jury.

                                                **Gale, Angelo, Johnson, & Pruett, P.C.**

Dated: October 7, 2019                */s/ Joe Angelo*
                                                Joe Angelo
                                                Elliot Gale
                                                Attorneys for Plaintiff